**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **STARR INDEMNITY & LIABILITY CO.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No.  11-cv-0858-MJR-PMF** |
| **BOYS AND GIRLS CLUB OF** ) | |
| **CARBONDALE,** ) | |
| **RANDY OSBORNE,** ) | |
| **DARLENE FAUST,  and** ) | |
| **FORRESTINE WILLIAMSON,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

**REAGAN, District Judge:**

Plaintiff insurer Starr Indemnity & Liability Company ("Starr") has brought this action for declaratory judgment regarding whether it owes a duty to its insureds, Defendants Boys and Girls Club of Carbondale ("the Club") and Randy Osborne (the Club's executive director), to defend them against two civil lawsuits brought by Darlene Faust and Forrestine Williamson (who are also defendants in this action).[1]  Faust and Williamson's minor children were allegedly removed from the premises of the Club by a Club volunteer and sexually assaulted on multiple occasions between 2006 and 2010.  The two mothers have filed separate suits:

> The Faust Suits—*Darlene Faust v. Boys and Girls Club of Carbondale, and Executive Director Randy Osborne*, Case No. 11-L-68, Circuit Court, Williamson County, Illinois (Doc. 55-2); upon transfer, re-designated *Darlene Faust v. Boys and Girls Club of Carbondale, and Executive Director Randy Osborne*, Case No. 11-L-57, Circuit Court, Jackson County, Illinois (Doc. 55-4); and

---

[1] The policy at issue is Starr Policy No. PSGL-100000-01, Certificate No. P2GL-105543-01 (Doc. 55-1).  Coverage is limited to $1 million per occurrence, and $2 million in the aggregate.

The Williamson Suit—*Forrestine Williamson v. Boys and Girls Club of Carbondale, and Executive Director Ron* [sic] *Osborne*, Case No. 12-L-__, Circuit Court, Jackson County, Illinois (Doc. 55-5).

Starr is before the Court seeking summary judgment (Docs. 50 and 51).  Starr asserts that it has no duty to defend or indemnify the Club and Osborne relative to the Faust and Williamson lawsuits because of the applicability of two exemptions in the Club's general liability insurance policy:  the Abuse or Molestation Exclusion (Doc. 55-1, p. 33), and the Assault and Battery Exclusion (Doc. 55-1, p. 45).  The Club has filed a response, arguing that the two exclusions do not bar coverage for the claims raised in the Faust and Williamson suits (Doc. 56).  The Club also characterizes the two exclusions as ambiguous, and otherwise attempts to parse the policy and prioritize the exclusions so as to maintain coverage.  Faust and Williamson have jointly filed a similar response (Doc. 59).

Starr claims that Defendants' "unique and original contract law arguments" constitute exceptional circumstances justifying a reply.  *See* Local Rule 7.1 (only permitting replies to be filed under exceptional circumstances).  Because Defendants present arguments not addressed in Starr's memorandum in support of summary judgment, Starr's two replies (Docs. 58 and 60) will be considered by the Court.

## I.      Applicable Legal Standards

"The construction of an insurance policy and a determination of the rights and obligations arising under the policy are questions of law for the court, and summary judgment is an appropriate proceeding for resolving these questions."  *Westfield National Insurance Co. v. Continental Community Bank and Trust Co.*, 804 N.E.2d 601, 604 (Ill.App. 2nd Dist. 2004).

As a general matter, summary judgment should be granted when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Bevolo v. Carter,* 447 F.3d 979, 982 (7th Cir. 2006), *quoting* Fed.R.Civ.P. 56(c), and *citing Ezell v. Potter,* 400 F.3d 1041, 1046 (7th Cir. 2005), *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986).  In assessing whether summary judgment is warranted, the Court must construe all evidence, plus the inferences reasonably drawn from the evidence, in the light most favorable to the non-moving party.  *Sallenger v. Oakes,* 473 F.3d 731, 739 (7th Cir. 2007), *citing Leaf v. Shelnutt,* 400 F.3d 1070, 1078 (7th Cir. 2005).  The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247 (1986); *Salvadori v. Franklin School District,* 293 F.3d 989, 996 (7th Cir. 2002). Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal.  *Salvadori,* 293 F.3d at 996 (*citing Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.,* 278 F.3d 693, 699 (7th Cir. 2002)).

The duty of an insurer to defend its insured against suit depends on whether the underlying lawsuit alleges facts within, or potentially within, the ambit of coverage.  *Westfield*, 804 N.E.2d at 604.  In a declaratory judgment action such as this, the Court usually looks to the allegations in the underlying complaint (the Faust and Williamson suits) and compares the allegations to the relevant provisions of the insurance policy.  *Pekin Insuarance Co. v. Wilson*, 930 N.E.2d 1011, 1016-1017 (Ill. 2010).

The complaint is liberally construed, with all doubts resolved in favor of the insured.  *Maryland Casualty*, 466 N.E.2d at 1093.

> "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.,* 337 Ill.App.3d 356, 361, 271 Ill.Dec. 711, 785 N.E.2d 905 (2003). "'[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.'" *Illinois Emcasco Insurance,* 337 Ill.App.3d at 361, 271 Ill.Dec. 711, 785 N.E.2d 905, quoting *International Insurance Co. v. Rollprint Packaging Products, Inc.,* 312 Ill.App.3d 998, 1007, 245 Ill.Dec. 598, 728 N.E.2d 680 (2000).

*American Economy Ins. Co. v. Holabird and Root*, 886 N.E.2d 1166, 1171 (Ill. App. 1st Dist. 2008). In *Pekin Insurance Co. v. Wilson*, 930 N.E.2d at 1019-1020, the Illinois Supreme Court concurred with the *Holabird and Root* decision, and further agreed that, in certain circumstances, it is appropriate to examine evidence beyond the underlying complaint. *Id*. at 1020. In *Holabird and Root*, consistent with the summary judgment analysis, it was appropriate to examine a third-party complaint to glean all relevant facts needed to determine whether there was a duty to defend. *Pekin*, 930 N.E.2d at 1020-1021 (summarizing with approval *Holabird and Root*).

The insurance policy is construed as a whole, taking into account the type of insurance, the risks undertaken, the subject matter that is insured, and the purpose of the entire contract. *Westfield*, 804 N.E.2d at 639. Moreover, according to the policy itself, the *entire* policy must be read to determine rights, duties and coverage (Doc. 55-1, p. 16). If the terms of the policy are clear and unambiguous, they are given their ordinary meaning, but if a term is susceptible to more than one meaning, it is considered ambiguous and will be interpreted strictly against the insurer, who drafted the policy. *Pekin*, 930 N.E.2d at 1017. Exclusions are

interpreted liberally in favor of the insured.  *Id.*  Contract principles, not tort principles, must be used in interpreting the policy and Starr's contractual liability.  *AAA Disposal Systems, Inc. v. Aetna Casualty and Surety Co.*, 821 N.E.2d 1278, 1290 (Ill. App. 2nd Dist. 2005); *Allstate Insurance Co. v. Smiley*, 659 N.E.2d 1345, 1354 (Ill. App. 2nd Dist. 1995); *Transamerica Insurance Co. v. South*, 89 F.3d 475, (7th Cir. 1996) (opining that the Illinois Supreme Court would follow *Allstate Insurance Co. v. Smiley* and not allow tort principles to be used instead of contract principles in insurance contract construction).

## II.   The Issues

For obvious reasons, a declaratory judgment action to determine the insurer's duty to indemnify—to pay—must usually wait until the underlying action is determined and the insured's liability is fixed.  *Maryland Casualty Co. v. Chicago and North Western Transportation Co.*, 466 N.E.2d 1091, 1095 (Ill.App. 1st Dist. 1984).  However, if the issues in the action for declaratory judgment are separable and can be decided without prejudicing the underlying case through application of collateral estoppel, then the declaratory judgment may be decided. *Id.* at 1095-1096 (citing *Murphy v. Urso*, 430 N.E.2d 1079 (Ill. 1981)).  The parties do not dispute that this declaratory action can be decided without impacting the underlying Faust and Williamson lawsuits.  Also, there are no questions of material fact at issue, so summary judgment is appropriate.

### A.  The Complaints

From Starr's perspective, the Faust and Williamson lawsuits are merely attempts to invoke coverage through artful pleading.  Citing *Pekin Insurance Co. v. Wilson*, Starr advocates looking at all the factual allegations in the pleadings, including the original Faust complaint, to determine whether there is a duty to defend.  Put succinctly, Starr's position is that

the "bodily injury" at issue arose from sexual abuse and molestation and/or assault and battery,

regardless of the Club's or Osborne's negligence (*see* Doc. 51, pp. 7-9).  Starr contends that

*United National Insurance Co. v. Entertainment Group, Inc.*, 945 F.2d 210 (7th Cir. 1991) is

"virtually on all fours" with this case.  In *United National*, an "arising out of assault and battery"

exclusion was used to deny coverage where a minor was raped at a movie theater and the theater

was sued for negligent supervision and maintenance of the premises.  Starr highlights a footnote

in *United National* that analyzes and quotes a number of Pennsylvania cases, including *Sauter v.

Ross Restaurants, Inc.,* No. 80-1202 (E.D.Pa. May 21, 1981).  Those cases stand for the

proposition that, notwithstanding negligence allegations in the underlying complaint, the

*immediate* cause of injury controlled the duty to defend and indemnify.

> But, although the injuries must, in this sense, have been caused by [the
> insured's] negligent acts, it does not follow that these same injuries did not
> "aris[e] out of assault and battery."  Plaintiffs' real contention is that their
> injuries arose out of an assault and battery which, in turn, arose out of [the
> insured's] negligence.

*United National*, 945 F.2d at 214 FN.5 (quoting *Sauter v. Ross Restaurants, Inc.,* No. 80-1202 at

*6 (E.D.Pa. May 21, 1981).  Similarly, Starr also relies prominently on *Erie Insurance Exchange

v. First United Methodist Church*, 690 F.Supp.2d 410, 415 (W.D. N.C. 2010), in which the

district court explained (quoting *Allstate Insurance Co. v. Bates*, 185 F.Supp.2d 607, 612-613

(E.D. N.C. 2000)):  "[T]he exclusion applies to 'the injury at issue, not the pleaded cause of

action.' * * * In other words, 'the issue is whether the alleged bodily injury . . . arose from sexual

molestation—not whether another individual's alleged negligence arose out of the sexual

molestation.'"

        As a preliminary matter, the Court rejects Starr's contention that, in keeping with

*Pekin Insurance Co. v. Wilson*, Faust's original complaint should be considered—specifically,

the allegations regarding the Club and Osborne's duty to not allow Brooks to remove the minor from the Club for the purpose of engaging in sexual relations.  *Wilson* (and similarly *Holabird and Root*) is distinguishable, in that a counterclaim was considered along with the complaint because the third-party complaint raised a self-defense claim which, if proven, could negate an otherwise applicable "intentional act" exclusion to coverage.  The original Faust complaint was amended.  "It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*." *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998) (a factual allegation contained in an original complaint could not be considered in determining an FMLA coverage issue).  Therefore, only the amended Faust complaint will be considered.  However, not considering the original complaint has little or no impact on the Court's analysis of the two exclusions at issue, as the amended complaint makes clear that the minor was removed from the Club and (allegedly) sexually assaulted by Brooks.

The Faust amended complaint (Doc. 55-4) asserts a single, overarching claim of "Negligent Supervision and Care of a Child."[2]  The amended complaint alleges, "[t]hat by operating as a youth club that provided supervised programming for minor children, the Defendant owed a duty to properly supervise and to ensure the overall safety of the minor children, including the Plaintiff's minor child . . . who were receiving their services and/or who were attending, or participating , in their programming events"  It is further claimed that on numerous occasions from 2006-2010, "the Defendant failed to properly supervise or provide

---

[2] The Faust amended complaint and the Williamson complaint both name the Club and its executive director, Osborne, as defendants, but the singular "Defendant" is utilized in the allegations, although judgment is sought against both the Club and Osborne.  The adequacy of the pleadings as to each party will not be discussed further because the Starr insurance policy clearly includes the Club and Osborne as insureds (*see* Doc. 55-1, p. 24 (Policy § II ¶ 1(d))).

adequate care for" the minor child, by allowing the removal of the minor from the premises by

an unauthorized individual and, "as a result of the Defendant's failure to provide adequate

supervision by maintaining the custody, care, and/or control of the Plaintiff's minor child," the

child was "sexually assaulted" and had "other inappropriate physical sexual contact" by Herbert

Brooks.  Finally, Faust alleges, "[t]hat as a direct and proximate result of the Defendant's failure

to properly supervise the Plaintiff's minor child," . . . "the minor child has suffered severe,

traumatic physical, mental, and emotional injuries . . . ." (*See* Doc. 555-4, pp. 2-3 (¶¶ 7-10 of the

Faust amended complaint)).

The Williamson complaint is virtually identical to the Faust amended complaint,

but the allegations pertain to Williamson's two children.  Therefore, the specific allegations will

not be repeated.  Rather, the Court will refer collectively to "the complaints," meaning the Faust

amended complaint (Doc. 55-4) and the Williamson complaint (Doc. 55-5).

As all of the defendants stress, the complaints do *not* assert legal claims regarding

molestation or abuse, or assault and battery.  Rather, negligent supervision is the alleged "direct

and proximate" cause of the children's bodily injury.   Nevertheless, the sexual abuse by Brooks

is, of course, *a* cause of the bodily injuries incurred.  As will be discussed at length, the interplay

of those two causes of injury lies at the heart of the coverage issue.

## B.   The Policy

The Starr policy affords commercial general liability coverage to the insureds, the

Club and its officers and directors, which would include Defendant Osborne (Doc. 55-1, pp. 2,

16 and 24 (Policy § II ¶ 1(d))).  The parties do not dispute that Brooks lost his "insured" status

by his acts.  Starr has a duty to defend against any suit seeking damages for whatever is covered

by the policy (*see* Doc. 55-1, p. 16 (Policy § I ¶ 1(a))).  The policy covers "sums that the insured

becomes legally obligated to pay as damages because of 'bodily injury'" (Doc. 55-1, p. 16 (Policy § I ¶ 1(a))).  Under the Abuse or Molestation Exclusion ("the Abuse Exclusion"), the policy does not apply to bodily injury "arising out of": (1) "[t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured" or (2) the negligent supervision of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by [the preceding paragraph]" (Doc. 55-1, p. 33). Under the Assault and Battery Exclusion ("the Assault Exclusion"), the policy does not apply to bodily injury "arising from": "assault and battery" or "harmful or offensive contact between or among two or more persons" (Doc. 55-1, p. 45).   The parties do not dispute that the Faust and Williamson minors were sexually abused and that that constitutes "bodily injury" "abuse or molestation" and "assault and battery."   However, the parties contest the applicability of the exclusions, as drafted and relative to the Faust and Williamson suits.

### C. **The Arguments**

From Starr's perspective, the claims in the Faust and Williamson complaints regarding negligent supervision of the children are not wholly separable from the sexual abuse. Rather, the injuries alleged would not exist regardless of the acts or omissions of the Club and/or Mr. Osborne (*see United National Insurance Co. v. Entertainment, Group, Inc.*, 945 F.2d 210 (7th Cir. 1991)). Therefore, the use of the terms "arising out of" and "arising from" in the Abuse Exclusion and the Assault Exclusion serve to sweep the Faust and Williamson negligence claims within the ambit of the two exclusions.  Starr relies upon *Transamerica Insurance Co. v. South*, 975 F.2d 321, 329 (7th Cir. 1992), and *Maryland Casualty Co. v. Chicago and Northwestern Transportation Co.*, 466 N.E.2d 1091, 1094 (Ill. App. 2nd Dist. 1984), in which the phrase "arising out of" has been construed as meaning "but for" causation, as well as "originating

from," "having its origin in, "growing out of," and "flowing from."  Starr further argues that, regardless of the abuse itself, the Assault Exclusion is applicable because it pertains to any act or omission in connection with the prevention or suppression of assault and battery—thereby encompassing negligent supervision of the children (*see* Doc. 55-1, p. 45 (Assault Exclusion (A)(2)(1)).

From Defendants' perspective, in accord with the policy's definition(s), the Abuse Exclusion is wholly inapplicable because when the children were molested they were not in the care, custody or control of *any* "insured"—meaning the Club, Osborne and/or Brooks. Defendants further contend that the more specific Abuse Exclusion controls, rather than the general Assault exclusion. Starr counters that the children were within the care, custody or control of the Club when they were abused.  Starr also asserts that any overlap between the two exclusions would not totally gut the broad Assault Exclusion.

In the alternative, Defendants argue that the Abuse and Assault Exclusions are both ambiguous and unenforceable.  Defendants cite the parties' competing interpretations, their disagreement regarding who is an insured, the confusing layout of the Assault Exclusion, and the confusing interplay between the two exclusions.  Starr does not consider Defendants' perceived ambiguities and/or construction of the two exclusions as reasonable.

### III.   Analysis

#### A. Ambiguity

Defendants assert that the Abuse Exclusion and the Assault Exclusion are ambiguous and, therefore, unenforceable. The Court finds that the ambiguities cited by Defendants are contrived.  Consequently, the mere fact that Defendants assert that the parties' competing interpretations establish ambiguity does not make it so.  The policy clearly defines

who is an insured, and under what circumstances (specific analysis follows).   Defendants'
assertion that the layout of the Assault Exclusion is confusing is unreasonable; the bolded words
and layout of the endorsement mirror that of the policy itself. Lastly, the interplay between the
two exclusions is not ambiguous; rather, how any overlap is addressed is a matter of law (further
analysis follows).

### B.  <u>Negligence and/or Sexual Assault</u>

Relative to the Faust and Williamson complaints, although Defendants plead only
negligence claims, those claims are not wholly separable from the sexual abuse itself.   "[T]he
phrase 'arising out of' implies the words 'in whole or in part' whether they are written or not."
*Patrick Engineering, Inc. v. Old Republic General Insurance Co*., 973 N.E.2d 1036, 1041 FN. 3
(Ill.App.2nd Dist. 2012).   Thus, the Abuse exclusion will only apply to bodily injury that arose
from—in whole or in part—abuse or molestation while in the care, custody or control of any
insured.   The Assault exclusion will only apply to bodily injury arising from—in whole or part—
assault and battery or any act or omission in connection with the prevention or suppression of
such acts.

Case law acknowledges that there may be multiple causes; the key consideration
is whether the injuries arose from "wholly independent" events.   *Northbrook Property and
Casualty Co. v. Transportation Joint Agreement*, 741 N.E.2d 253 254 (Ill. 2000); *Allstate
Insurance Co. v. Smiley*, 659 N.E.2d 1345, 1353-1354 (Ill.App.2d 1996); *Transamerica
Insurance Co. v. South*, 975 F.2d 321, 330-331 (7th Cir. 1992).   The negligent supervision of the
children must stand on its own.   If the events are "inextricably connected," then it will not matter
that the Faust and Williamson complaints only allege negligence. *Smiley*, 659 N.E.2d at 1352.
For example, in *South* (975 F.2d at 330-331), two causes were deemed interdependent where the

otherwise excluded event predominated and constituted the sole injury which was necessary for recovery; and in *Allstate Insurance Co. v. Panzica*, 515 N.E.2d 1299, 1301 (Ill. App. 3rd Dist. 1987), two causes were inextricably intertwined as a matter of law.  Here, without the sexual abuse, there is no injury from mere negligent supervision.  As alleged in the complaints, the Club and Osborne "owed a duty to properly supervise and to ensure the overall safety of the minor children;" the unsafe condition and resulting bodily injury are inseparable.

From Starr's perspective, the interdependence of the negligent supervision and the sexual assault would dictate that the Abuse Exclusion and/or the Assault Exclusion controls, as in *United National Insurance Co. v. Entertainment Group, Inc.*, 945 F.2d 210 (7th Cir. 1991).  In that case, injuries arose from an assault and rape, and although only negligence was alleged in the underlying complaint, the assault and battery exclusion in the insurance policy still controlled and precluded coverage.  However, the ultimate determination of coverage or exclusion depends on the complaints and the policy in *this* case, so further analysis is necessary.

### C.  The Specific v. The General

The Assault Exclusion pertains to bodily injury arising from assault and battery or any act or omission in connection with the prevention or suppression of such acts.  The Abuse Exclusion only pertains to abuse or molestation that occurs while the child is in the care, custody or control of any insured, as well as the negligent supervision of any person whose conduct would be so excluded (which the Court construes would exclude coverage for the negligent supervision of Brooks).  There is no dispute that sexual assault qualifies as assault and battery under both the ordinary and popular meaning of those words, and under the Illinois Criminal Code, 720 ILCS 5/12-1 (*see* Doc 51, pp. 14-15).

"It is a well-settled principle of contract construction that when a contract contains both general and specific provisions relating to the same subject, the specific provision controls." *Willison v. Economy Fire & Casualty Co.*, 690 N.E.2d 1073, 1077 (Ill. App. 4th Dist. 1998). When the intentions in two provisions conflict, the general clause should be subjected to such modification or qualification as the specific clause makes necessary." *McDonald's Corp. v. Butler Co.*, 511 N.E.2d 912, 917 (Ill. App. 2nd Dist 1987).

Thus, the more specific Abuse Exclusion trumps the Assault Exclusion. pursuant to the narrower Abuse Exclusion, the bodily injury stemming from Brooks' alleged conduct is only excluded if it occurs while in the care, custody or control of an insured.

Starr cites *Qualls v. Country Mutual Insurance Co.*, 462 N.E.2d 1288 (Ill. App. 4th Dist. 1984), and *Hawkeye Security Insurance Co. v. Hodorowicz*, 406 N.E.2d 146 (Ill.App. 1st Dist. 1980), which involved ambiguous exclusions that arguably conflicted. However, there is no ambiguity in the meaning of the Abuse and Assault Exclusions in this case[3]; rather, there is overlap between specific and general clauses. Thus, *Willison v. Economy Fire & Casualty Co*. would control.

**D. Care, Custody or Control of an Insured**

Defendants contend that the Abuse and Molestation Exclusion is not applicable because the abuse did not occur while the children were in the care, custody or control of any insured. Defendants rely on the policy's definition of who is an insured. Brooks, whether an employee or volunteer of the Club, loses his insured status because his actions were unrelated to, and beyond the scope of the Club's business (*see* Doc. 55-1, p. 24 (Policy § II, ¶ 2(a))). Starr contends:

---

[3] Although the Court does not perceive the Abuse and Assault Exclusions as being ambiguous, because any ambiguity would cause the two provisions to be construed in the insureds' favor.

> The Club is alleged to have had that care, custody, or control:  the children had to be "*removed* from [the Club's] custody, care, and/or control and from [the Club's] premises, or from [the Club's] events" (emphasis added) and abused by Mr. Brooks.

Doc. 58, p. 2.  Starr ignores that the Abuse Exclusion specifies that the abuse or molestation must occur "*while* in the care custody of control of any insured."

The Faust and Williamson complaints allege that the children were removed from the Club's custody and then sexually abused.  "Starr has not disputed that the children were not in the Club or Osborne's care, custody or control when they were sexually abused.  Furthermore, care, custody or control" is generally construed as meaning immediate possession.  *See generally Maryland Casualty Co. v. Holmsgaard*, 133 N.E.2d 910, 914 (Ill.App. 2nd Dist. 1956); *Leiter Electric Co. v. Bituminous Casualty Corp.*, 241 N.E.2d 325 (Ill. App. 3rd Dist. 1968).  According to Webster's Dictionary (http://www.merrium-webster.com/dictionary): "care" refers to "charge" or "supervision"; "custody" is defined as "immediate charge and control"; and "control" means "to exercise restraining or directing influence."  Therefore, the Abuse exclusion is inapplicable.  As a result, Starr has a duty to defend the Club and Osborne in the underlying negligence action.

## IV.   <u>Conclusion</u>

For the reasons stated, Plaintiff Starr Indemnity & Liability Company's motion for summary judgment (Doc. 50) is **DENIED**.  Declaratory Judgment is **GRANTED** in favor of Defendants Boys and Girls Club of Carbondale, Randy Osborne, Darlene Faust and Forrestine Williamson, in that the Court **FINDS** that Plaintiff Starr Indemnity & Casualty Company has a duty to defend the Boys and Girls Club of Carbondale and Randy Osborne in *Darlene Faust v. Boys and Girls Club of Carbondale, and Executive Director Randy Osborne*, Case No. 11-L-57, Circuit Court, Jackson County, Illinois, and *Forrestine Williamson v. Boys and Girls Club of Carbondale, and Executive Director Ron* [sic] *Osborne*, Case No. 12-L-__, Circuit Court,

14

Jackson County, Illinois; and in the event the Boys and Girls Club of Carbondale and Randy Osborne are found legally obligated to pay damages for bodily injury in one or both of those lawsuits, Starr Indemnity & Casualty Company must indemnify them for those damages.

**IT IS SO ORDERED.**

**DATE:  November 19, 2012**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**